Good morning, Your Honors. I think this is fairly thoroughly briefed. I realize the brief is factual. I think Paper, please speak up a bit. I think this is fairly thoroughly briefed. I realize the briefs are very factual. I believe many of the problems here have their origin in factual matters. The difficulty here is that the district court did not do the kind of review that the Ninth Circuit has twice asked it to review, to perform. And I believe its ability to perform that review has been impaired by the kind of evidence that the fee applicant provided, or rather didn't provide. Let me ask you a question. It's sort of hard for me to frame directly, but, you know, if the district court were correct in what I would guess I would call the core finding that the Lanham Act claims and the non-Lanham Act claims are inextricably intertwined and he can't separate them out, if the district court were correct in that finding, even if it didn't dot the I's and cross the T's quite right on the rest of the issues, we're really at that point talking sort of nickel and dime stuff. So what would your feeling be about having a mediator look at the nickel and dime stuff? I'd be happy to participate in mediation. Are you meaning in an arbitration standpoint or mediation standpoint? Well, of course, this Court has a mediation office. And my thought would be simply, I mean, it's my thought only, would be a reference to the mediation office to just try to bring this rascal to a conclusion. I'd be happy to do that. That was Judge Kaczynski's thought last time around, and we did spend some time with the mediator. We did already. I'm sorry. I didn't know that. And what happened? You're there back here. At the bottom line, nothing happened and it was resubmitted, and that's when the panel in the second opinion, the second panel to grapple with these issues, made its rulings. We then went back to Judge Conte. He lopped off another $100,000 or so. But in the mediation, to pick up Judge Reimer's excellent point, in the mediation, was part of the mediation issue whether these were still separable issues, or was it agreed that you couldn't separate the Lanham Act cases from the others and you were just working out the nickel and dime issues, or were you hung up on the separation issue? Actually, we never got that far. The mediator assigned by the circuit office conducted a number of telephone conferences separate, and we never had an actual mediation session. Okay. Thank you. Okay. I have another sort of more specific question, I guess. Again, setting aside the core finding, you make a, what, superficially I don't mean to be pejorative about it, but I just mean on the surface, a very persuasive argument that the district court did not adequately take into account fee entries for the mark when he made his 10 percent across-the-board reduction. And I think you cite 211 entries that, you know, I look at the number and I say, gee whiz, that's pretty easy to quantify. But then I look further and it appears to me that the bulk of those entries occurred before the trial, and therefore at a time when the two claims were still quite intertwined and before the defense genericness had been raised. If so, then what's wrong with the 10 percent reduction as a reasonable estimate? I think that if you look at how the case was litigated, you could see different kinds of percentages and also, by the way, a different core finding. The whole case was about controlling the Gracie name. Everything else was peripheral. And while the legal issues on an infringement claim for a logo are similar to the legal issues on a claim for the Gracie jiu-jitsu mark, that's really a first blush reaction. The discovery had to do with who used it first, what was going on in Florida, because Horian was never in Florida, are there territorial restrictions, is there secondary meaning in the family as opposed to in the registrant. And then, of course, the Triangle Design logo was an incontestable mark, so defenses that are available on the Gracie jiu-jitsu mark never would come up in the context of the Triangle Design logo. I think a more significant issue would be to look at how few references there are to the Triangle Design in discovery, in the motion for summary judgment, in the motions in limine. It simply was a very unfortunate pimple that burst and inflamed. And the other difficulty, to get back to the 211 items, is this block billing problem. And we asked for the underlying time slips, the individual ones. They've never been produced. The district court didn't order the fee applicant to produce them. If we had those, we would be in a much better position to identify what dollar amount of these individual fee items relate to this, the claim on which they lost. Basically, they lost the big one. And I think the district court has to take that into account. Mr. Draper, let me share with you my problem with your case, and maybe you can suggest some way out of my dilemma. I'm pretty well persuaded, although you still, of course, can have the opportunity to un-persuade me, that the trying to separate out, given the block billing, which is unfortunate, perhaps, in many respects, but what is, is. Given that, and I'll take that up with Mr. Cook, I don't see any real way anyone can ever do anything except conclude that the Lanham Act claims are so intertwined. And I've read all of your materials at length, perhaps inordinately, trying to see if I could sort them out, and I can't. So I think we're stuck with that. And after that, it becomes a matter of picking and choosing individual items and trying to sort through all that. Now, to be honest with you, I'm not going to do that. I don't think that's what appellate courts are for. And I look at the trial judge's standard of review, and at some point, this thing has got to come to an end. This is, I mean, if we grant you what you want, this is the third round of picking and choosing. There is some limit, I think, on what's going to make sense in this case. Do you have any suggestion as to how we can resolve this fairly but end it? What is your suggestion? I first want to say I share the sentiment very much. Secondly, I think it's absolutely unacceptable for the appellant to bear the burden of a really large fee claim because the fee applicant produces block billing. And I think that an analysis that includes that these issues are intertwined, which is We can't escape that. That's what is. What do you want to say? Not everything is intertwined. There are some clearly identifiable legal issues that are not intertwined, and they have to be carved out. I don't think that just because we're stuck with block billing records that the appellant has to pay everything because the attorneys, who are trademark attorneys and know that they need to keep these time records, didn't comply with their duty under Hensley to keep the kind of time records that would enable us to separate them out. I think the district court is the victim of the way the moving party who had the burden presented his fee records. And to the extent that some of these legal issues, for example, some of the defamation defenses are entirely different legal issues, but to the extent they are different legal issues, they need to be separated out. Then beyond that, to address the real issue here is how much of this bill should be carved away because it had to do with the Gracie Jiu-Jitsu Lanham Act claim on which the fee applicant lost. And I think part of that comes into the results analysis in terms of the relative importance of the marks, and part of it can be looked at in terms of how much of the energy of the case. You can look at the depositions. We provided evidence on this, by the way. Out of 8,000 pages of discovery documents produced, 100 related to the triangle design logo. That's a pretty telling statistic. And you can look at more than just the pleadings in the court file. You can look at the discovery, the depositions, the witness time to come up with a number. But I think the district court has to have a methodology that takes into account all of the kinds of activities. And I don't think we ever asked or suggested the district court a reference to a magistrate judge as a special master. That's not been suggested. I think that might be a good idea. I mean, because I routinely did that, mainly because I can't add and subtract and didn't want to try. But it seems to me that in some ways that's what would be helpful here. I agree that would be helpful. I tried to put together schedules to help break down the examples. But, again, I ran into the block billing problem. Other nickel-dime items are, you know, general trial preparations as a cover-up for when the attorney was actually down in Los Angeles. And those issues can all be addressed, I think, by reference to a magistrate. What's happening to what's going on now in terms of fees? Lawyers are continuing to work. Fees are continuing to accrue. What's happening to those? The case is really over except for this issue of fees. So all the fee work isn't an issue in terms of more fees? No, it's not. Why don't we hear from Mr. Cook and then come back to you. I just want to address the following, that virtually every argument posed by the appellants is an argument which has been, should be addressed to the trial court. That standard review, of course, is abuse of discretion. I don't think you're going to find any disagreement about that from anybody in this panel, certainly not at least from me. But the problem is, and it may be a problem that we created, mind you, because I can't square our two opinions. Never mind that, okay? So that's we did what we did. And the district court had to figure it out somehow. But I sort of look in vain for a district court's reasoning behind a 10 percent across-the-board deduction when there are, in fact, 211 specific entries that don't have anything, I mean, that you could separate out. I mean, you could do that. The district court did not give any explanation for the paralegal rate. Now, I mean, we're not talking about the huge dollars here. But he didn't do that and should have. He didn't make any statement at all with respect to redundant hours. He really didn't come to grips with the block billing issue, didn't do anything about unrelated litigation. So there's a lot of stuff. And my suspicion is it doesn't all add up to much in the grand scheme of things if the core finding holds up. But I don't know, and I don't think we can possibly make those judgments. I would tend to agree. That would be extremely difficult in listening to Ms. Draper. Many of the issues she raised as to the 8,000 pages and what was in discovery and who said what and what transpired would be solely within the province of the trial court, not within this court. But a lot of that problem is attributable to the way the billing was done, the way the trial lawyers were on your side, the way you kept your records. And I don't think it's illegal to do block billing, but it certainly doesn't give you a very good basis for helping the trial judge. And, frankly, Mr. Cook, my view is the only thing you've got going for you, even at this point, is a ticked-off trial judge and the burden and the standard of review that we have to wrestle with. As I indicated, I'm pretty well convinced that on the files and on the records that the trial courts got to work with, there isn't much to be done except to say that this stuff is also blended. But then there's a number of nickel-and-dime issues, which might or might not, Judge Reimer might be correct entirely, that it's not going to add up to much, but it might add up to a few hundred thousand dollars, which for some people might be something. Now, are you inclined to help out if the court wanted you to? Well, you know, with a request like that, it's tough to turn down. I'd like to just address one prior matter you raised. The issue of block billing, of course, one would say, well, it's best not to have block billing. It's best to itemize each item, you know, 10 minutes here, 15 minutes here, rather than to say the words trial preparation. That's essentially the block billing here. One might look at this and say, well, the trial court was the best arbiter, for lack of a better expression, in seeing block billing, but seeing parties here and understanding them, saying, well, I'm going to say that even though block billing is not appropriate, I'm going to still award the fees because trial judge says I was there and I can understand what they did. If that responds to the court's inquiry as to what we can do or not do, we've provided detailed records the first time around, provided detailed analysis the second time around. So I'm not sure what more could be done, other than to literally hear from this Court to remand and then to relitigate the matter. I think that's what the Court is suggesting here. Well, since you're the one who wants the fees, and if your records don't allow for any kind of discrete separation of claims that appear to be separable, even assuming Judge Flager is correct in a view I share, that the basic core finding is probably Okay. Why shouldn't you just lose? Why shouldn't I just lose? Well, because the trial court made on this go-around, being the December 4th, 2003, following the remand from this Court, went through every cause, every claim, every case, had the same common threat. And the – I hear a lot of discussion from adverse counsel saying the legal issues. No, the Court said legal issues. We're dealing with common facts. And the Court did a nice job of showing how the common facts are closely related. And I went through and looked at the complaint and compared all of that. And the Court was quite right about that. But the legal issues are different. And when a lawyer prepares briefs and arguments, once the facts are stated, the whole argument then turns to what to do about the legal issues. It's not like they're immaterial. I mean, there is fact pleading, but that's the first step. After that, the question is, what's the right answer? And I think you all must have spent some time discussing the right answer, did you  Well, that I would readily concede. I'm not going to argue with that. But on the other hand, from the trial court's view, who literally was at the front row seat, had the front row seat, as we say here, would say, I saw the time, I saw the effort, I – and says, I cannot distinguish one between the other. And to say that we completely lose would be, of course, a terrible injustice because, in effect, the plaintiff was the proponent of the entirety of this matter and none of plaintiff's claims went to trial, and of which the tragedy befalling this defendant is that the plaintiff merged or litigated Lanham and non-Lanham claims. So, yes, there's some block billings. I mean, the record is, you know, I can't argue with that. But in effect – and yes, my client bears the burden to attempt to just, you know, delineate these, but we're not the maker of this. I mean, in effect – in effect, it penalizes defendant for being the subject of litigation of which the core issue is ultimately posited by the plaintiff in merging these two claims. Are you saying you had no option except to engage in block billing under these circumstances? No. Of course not. I wouldn't claim that. But the fact is that the claims were merged together. And the trial court would be best to say, well, if there's trial preparation, then I'm going to presume that one was the other. We have findings here. Don't you know where you're – you certainly know when you're engaged in this process that the fee issue is going to come up. And so wouldn't one be wise to prepare for that by not block billing, even though the plaintiff may have done what you say was done in this case? It – I started out as a bankruptcy lawyer where the specificity requirements are fanatical, so to speak, just to tell you. And for a good reason, so that the record can be closely examined and the judge can know what to do. Right. As we say, fanatical. But in this case, the judge, since we're not a bankruptcy court, the judge did his level best. I hear you saying the devil made us do it. And I'm not sure that's your only option. Well, I'm not sure I would say the devil made us do it, but we have an involuntary party here. I mean, it's a little different than one would say, well, you know, my guy was a plaintiff and, you know, took his chances here. And a lot of these fees arose out of – and the district court was quite clear in two times. It was quite clear that a lot of these fees arose out of the conduct of the plaintiff and without being discourteous to Ms. Draper, conduct of Ms. Draper. The court was extremely clear that these are land fees which are extraordinary by their very nature. This is not a contract rate or a statutory fee claim as you would get in bankruptcy court. This is off the beaten path, for lack of a better expression. I'm not suggesting fees are off the beaten path, but, you know, what was done, what was done. But it would be an injustice for my clients to suffer this fee loss here. And I think the trial court did its level best and acknowledged even the trial court said the Meat Acts approach to apportionment is not the most desirable way of resolving fees. Okay. Thank you very much. You're very welcome. Just briefly, one of the things that creates a need for appellate review here is that the district court judge relied unduly on the statements in the Gorelnik Declaration. And I think that's evident in the fact that he adopted the list of 15 fee items and disregarded the schedules numerating hundreds of fee items that related, for example, to the claim over the Gracie Jiu-Jitsu mark. Another one of those areas is that none of plaintiff's claims made it to trial. Actually, some of plaintiff's claims did make it to trial. They did not make it to verdict. They were the subject of a non-suit. Plaintiff filed this case to stop Horry and Gracie from trying to control the Gracie name, and in evidence are dozens of letters sent to the many Gracie family members telling them, you can't use your name in Jiu-Jitsu, letters sent to magazines saying that they couldn't use the phrase Gracie Jiu-Jitsu, letters sent to seminar promoters saying you can't use Henzo Gracie's name in advertising the seminar where he's doing the teaching because we've got the lock on the Gracie name. That is what the case was about. It was not about the triangle logo, and I wish I could wipe that triangle logo off the map, but I couldn't, and it's very important to remember that that's what this case is about. And that's why a 10 percent allocation is just inconsistent with the realities of the case, and it's inconsistent with the result factors, as well as from ‑‑ it comes up two ways. It comes up when you determine how many hours were reasonably spent on the successful Lanham Act claims. When you make your Lodestar calculation, it comes up again in the question of a results analysis under the curve factor. The appellant won the main issue here. Separately, when we get into what I would call the nickels and dimes, they might not be so small. There's a discrepancy, I think the number's around 183,000, about what fees were actually billed to the client versus what fees were included in the computer dump that was attached in support of a fee application. One of the reasons it's really important to analyze the detail is because a fee application is not an opportunity for the successful attorney to dump everything that he might have written off into an attorney fee award, and I think that needs to be looked at. What has the client paid, what did the attorney voluntarily adjust out, and what hours were really billed when they thought the client might have to pay the bill versus what hours were added back in later that had been written off. Part of that's the voided invoice that has been adjusted out, but there are other issues. It needs to be looked at, and I don't believe it was looked at by the district court judge. Well, there's no law that says you should get the benefit of their concessions to their client, is there? Well, there is. Fees that are not chargeable to the client are not awardable against the opposing party, and I believe that's the case. Chargeable or not charged? Not chargeable is the language. That's different, isn't it? Yes, however, I think that an attorney's adjustment of his bill could be probative on the issue of what's a reasonable fee, and therefore, I think it's information that ---- Well, maybe I'm under a misimpression. You say that wasn't looked at. I thought it was. The voided invoice was deducted. Right. But the problem is they used their computer dump, and because it's a sort of a pre-bill rather than the actual bill, it has other kinds of information. It doesn't show what the charge is. It shows what the value is at the posted price. And you're saying that the district court, and this was ignored the last time it was before the district court? Yes. There's a statement on those documents, fees billed to date, and it's around $331,000 or somewhere in that range, and yet this is as of the end of the picture when 581,000 in fees were being asked for. There's a discrepancy. I think that the discrepancy is significant enough that it should have been inquired into. We asked the district court to allow us to take discovery so we could inquire into it. I don't want to make a proverbial Federal case out of the fee applicant, but this is a lot of money. It's a great deal of money. It's a great deal of money not to Oracle and Microsoft, but certainly to the individuals here on both sides. And your request for additional discovery was denied? Ignored. Not even ruled on? Not even ruled on. I have no further questions, Your Honor. Thank you. Thank you. The matter just argued will be submitted. Thank you.
judges: Trott, Rymer, Plager